606 So.2d 1341 (1992)
OUACHITA PARISH POLICE JURY, Plaintiff-Appellee,
v.
AMERICAN WASTE AND POLLUTION CONTROL COMPANY, Defendant-Appellant.
No. 24,415-CA.
Court of Appeal of Louisiana, Second Circuit.
October 14, 1992.
Writ Denied December 11, 1992.
*1342 C. Lynn Tubb, Parish Atty., Monroe, Phelps Dunbar by H. Alston Johnson, III, Steven J. Levine, J. Randall Trahan, Baton Rouge, for plaintiff-appellee/appellant, Ouachita Parish Police Jury.
Schwab & Walter by Gerald L. Walter, Jr., James C. Percy, Brent B. Boxill, Baton Rouge, Hudson, Potts & Bernstein by Ben R. Hanchey, William McNew, Monroe, for defendant-appellant/appellee, American Waste & Pollution Control Co.
*1343 Before NORRIS, LINDSAY and STEWART, JJ.
NORRIS, Judge.
The Ouachita Parish Police Jury sued American Waste and Pollution Control Co., d/b/a Waste Management ("American Waste"), seeking to enjoin American Waste from depositing lead-tainted dirt from a Dallas Superfund site into Magnolia Landfill, a solid waste facility operated by American Waste in Ouachita Parish. The police jury urged that the proposed dumping was a violation of American Waste's contract with the police jury to provide sanitary landfill services to the parish. The trial court entered a temporary restraining order and, after a four-day hearing, granted a preliminary injunction as prayed for. American Waste now appeals the grant of preliminary injunction on several grounds. The police jury also appeals certain findings of fact in the trial court's opinion. For the reasons expressed, we affirm.

Factual background
In 1983 Ouachita Parish Police Jury solicited bids to build a large, modern sanitary landfill for the parish. American Waste submitted the low bid and entered a contract with the Police Jury on May 1, 1984. The relevant provisions of the contract are set forth below, but it generally obligated American Waste to accept all forms of waste generated by residents of Ouachita Parish, and to comply with all policies and regulations of federal and state agencies having jurisdiction over sanitary landfills.
American Waste obtained the state permits to build a landfill for nonhazardous sanitary and industrial waste. Under federal law, Magnolia is considered a Subchapter "D" facility, which may receive solid (nonhazardous) waste. 42 U.S.C. ง 6941 et seq., Resource Conservation and Recovery Act ("RCRA"). Facilities for the receipt of hazardous waste (called Subchapter "C" facilities) are subject to stricter regulation. 42 U.S.C. ง 6921 et seq. (also in "RCRA").
American Waste began construction of Magnolia Landfill on the "Sullivan Tract," south of I-20 near La. Hwy. 594. The location is adjacent to the Russell Sage Wildlife Area and three miles west of Bayou Lafourche. Magnolia began receiving waste in early 1986. The landfill is divided into "cells," large excavations into which waste is dumped. Each day the waste is spread and covered with dirt or foam. Even with daily covering, rainwater seeps through the waste, creating a fluid called "leachate" that contains a high concentration of the substances in the waste. When the cell is full, it is sealed.
In June 1988, American Waste obtained a permit modification from the Louisiana Department of Environmental Quality ("DEQ") to allow Magnolia Landfill to accept waste from all areas regardless of point of origin. By late 1991, American Waste was building Cells 8 and 9 (the "as built" map of Cell 8 is dated March 1992). The bottom of these cells is a liner made of at least three feet of recompacted clay topped with at least one foot of sand. There is no synthetic material in the liner.
Meanwhile the U.S. Environmental Protection Agency ("EPA") was cleaning up a Superfund site in West Dallas. The site is near an old battery smelting plant and required the removal of 40,000 cubic yards of soil contaminated with lead, arsenic and other toxic metals. Under the Superfund statute, this soil is considered to contain hazardous substances. 42 U.S.C. ง 9601 et seq., Comprehensive Environmental Response, Compensation and Liability Act ("CERCLA"). The lead concentration in the Dallas dirt is 1,407 ppm, yielding a total of 180,000 lbs. of lead in the soil to be removed. EPA's removal contractor, Reidel-Peterson Environmental Services, let out bids for disposal of the soil and ultimately American Waste's bid was accepted.
In early February 1992 Reidel began shipping the soil by convoy of covered trucks to Magnolia Landfill. On February 10 the Police Jury formally requested that deliveries be stopped, citing provisions of *1344 the contract. American Waste refused, and this suit was filed on February 12.

The American Waste/Police Jury Contract
The general purpose of the contract is set out in ถ 2.01, which provides that American Waste will
accept and landfill all garbage and bulky waste, rubbish and other refuse delivered by the Parish, residents of the Parish, and public or private agencies domiciled in or operating in Ouachita Parish at the landfill site. Once duly licensed and permitted, American Waste will maintain and operate the landfill in compliance with the conditions set forth in length in the American Waste application for a sanitary landfill permit to the Louisiana Department of Natural Resources [now DEQ]. * * *
With respect to permits, ถ 2.02 states, "In the event that American Waste determines that permit modifications are needed, American Waste shall on its own and at its costs, secure such modification. The Parish of Ouachita shall be kept fully informed of all such permit modifications."
A reference to hazardous waste appears in ถ 2.04:
American Waste agrees * * * to accept for disposal all garbage and bulky waste, rubbish and other refuse generated by the residents of Ouachita Parish, whether delivered by automobile, trailer, or truck, and all material whatsoever, except hazardous waste, collected by any refuse hauler within the Parish of Ouachita. (emphasis added)
The contract defines hazardous waste in ถ 1.05 by reference to designations by the EPA and Louisiana Department of Natural Resources (now DEQ). A hazardous waste is "any chemical, compound, mixture, substance, or article" designated by EPA or DEQ "to be a hazardous or a toxic substance as terms defined by or pursuant to Federal, State or Parish rules, laws, or regulations."
American Waste is further obligated, in ถ 2.14, to "conduct operations under this contract in compliance with all applicable Federal and State Law."
Under ถ 15.01, the failure to perform any part of the contract by American Waste shall be considered a breach of contract. Should American Waste fail to perform or cure any defaults within 10 days of written notice, then the parties have the option to terminate the contract. Under ถ 15.02, "The remedy of the contracting parties in the event of default is the termination of the contract, an action on the bond and an action against the company."

Procedural history
The Police Jury's verified petition to enjoin violation of contract, filed February 12, 1992, asserts two claims of breach. The first is the territorial claim: ถ 2.01 specifies Ouachita Parish as the initial service area and ถ 2.02 requires American Waste to notify the Police Jury of any permit modifications; however, American Waste never notified the Police Jury of a modification and has accepted material from the state of Texas. The second is the hazardous waste claim: ถ 2.04 prohibits American Waste from accepting hazardous waste, but the Dallas dirt is a hazardous substance under CERCLA, and thus a hazardous waste under ถ 1.05's definition. The Police Jury alleged that mere termination of the contract would not prevent irreparable harm in the form of contaminated water supply and a threat to public health; thus it prayed for injunctive relief to restrain American Waste from accepting, placing or allowing to be placed lead-tainted soil in Magnolia Landfill. On the basis of this petition, the trial court issued a TRO.
By its first amending petition, the Police Jury added a third claim of breach of contract. Under ถ 2.14, American Waste must comply with all applicable Federal and State law; however, a provision of CERCLA, 42 U.S.C. ง 9621(d)(3), states that in the case of any Superfund removal or remedial *1345 action involving the transfer of any hazardous substance offsite, such hazardous substance shall only be transferred to a facility which is operating in compliance with special provisions of RCRA, 42 U.S.C. งง 6924 and 6925; and before the transfer may occur, the President (acting through the EPA) must determine that the unit to which the hazardous substance is transferred is not releasing any hazardous waste, and all such releases from other units at the facility are being controlled by a corrective action approved by the EPA administrator under Subchapter C. In short, American Waste does not have a hazardous waste disposal (Subchapter C) permit for Magnolia Landfill, so accepting the Dallas dirt there is a violation of CERCLA and a breach of the contract.
On March 2, American Waste filed a notice of removal of the action to United States District Court. Construing the amended petition as one "arising under" CERCLA, American Waste asserted the federal court had exclusive original jurisdiction under a special provision of CERCLA, 42 U.S.C. ง 9613(b). The Police Jury filed a motion to remand the case to state court, and supplied an extensive brief. Ultimately the federal court remanded the case to state court for lack of subject matter jurisdiction. Fed.R.Civ.Pro. 12(b)(1).
Back in state court the matter proceeded to a hearing for preliminary injunction on April 2, 3, 8 and 9, 1992; post trial briefs were filed. The court issued reasons for judgment on April 21.
Briefly stated, the court cited American Waste's duty to comply with all applicable federal and state laws under ถ 2.14. The court carefully analyzed the provision of CERCLA dealing with the removal of hazardous substances from Superfund sites, 42 U.S.C. ง 9621(d)(3), and found that it mandates that the substances be transferred to Subchapter "C" landfills. Since Magnolia Landfill is admittedly a Subchapter "D" facility, CERCLA does not permit it to receive such substances. The court considered and rejected American Waste's arguments to the contrary, including the contention that an EPA official, Mr. Warren Zehner, had approved the procedure; Mr. Zehner's approval notwithstanding, the disposal plan was contrary to CERCLA. The court then found, by referring to ถ 15.01, that American Waste's conduct was a breach of contract, thus permitting the Police Jury to bring "an action against the company." The claim for injunction was proper, and no showing of irreparable injury was needed, as the Police Jury was seeking to enjoin American Waste from a course of action forbidden by law. Miller v. Knorr, 553 So.2d 1043 (La.App. 4th Cir. 1989), and citations therein. The court therefore granted the preliminary injunction. The court further commented that on the showing thus far made, the Police Jury had not prevailed on its other contractual claims.
Judgment granting the preliminary injunction was signed on April 29, 1992. Both sides have appealed. The matter was expedited by order of this court on July 9, 1992.
Discussion: Subject matter jurisdiction
By its first assignment American Waste urges the trial court erred in asserting jurisdiction over this action. The argument is based on a provision of CERCLA, 42 U.S.C. ง 9613(b), which grants to federal district courts the "exclusive original jurisdiction over all controversies arising under" CERCLA, without regard to the citizenship of the parties or the amount in controversy. Without jurisdiction, American Waste contends, the state district court cannot grant relief of any kind over a CERCLA claim.
Whether a case "arises under" federal law is determined by reference to the plaintiff's well-pleaded complaint. A federal court does not have jurisdiction over a case in which the complaint asserts only a state law cause of action. The Police Jury's petition, as amended, sets forth three separate claims on which injunctive *1346 relief could be granted, each stemming from the alleged violation of a specific contractual provision. As an initial proposition, the claim is surely based on state law and properly within the trial court's jurisdiction.
In some instances, however, even though state law creates the plaintiff's cause of action, the federal court may have jurisdiction, if the plaintiff's right to relief under state law is necessarily dependent upon the resolution of a "substantial question of federal law." Franchise Tax Bd. v. Construction Laborers Vacation Trust, 463 U.S. 1, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983), and citations therein; see also Christianson v. Colt Indus. Operating Corp., 486 U.S. 800, 108 S.Ct. 2166, 100 L.Ed.2d 811 (1988). In the instant case the only claim that might arguably raise a substantial question of federal law is the third claim, alleging a breach of ถ 2.14 of the contract. This provision obligated American Waste to comply with all applicable federal laws, including CERCLA.
For jurisdictional purposes, however, we need not determine whether the Police Jury's ถ 2.14 claim raises a substantial question of federal law because the right to relief does not necessarily depend on its resolution. Either of the other two contractual claims, if resolved favorably to the Police Jury, would be sufficient to provide it with the relief sought. Neither of those claims raises an issue of federal law. For this reason we find that federal jurisdiction does not lie in this case, and the trial court was correct to assert jurisdiction.
We note parenthetically that American Waste removed this case to federal district court, but that court declined to accept jurisdiction. We are no more inclined to second-guess the federal judge's reasoning than we are empowered to reverse his decision. We perceive no error in our state court's decision to accept jurisdiction.
American Waste further asserts that after the federal court's remand and the state district court's ruling on the preliminary injunction, the Police Jury's only remaining claim for relief is the one based on ถ 2.14 of the contract and on CERCLA. With the genuine state claims winnowed out, the argument goes, jurisdiction in the state court is now improper.
We disagree. A preliminary injunction is a procedural device interlocutory in nature and designed to preserve the existing status pending a trial of the issues on the merits of the case. La.C.C.P. art. 3601; GMAC v. Daniels, 377 So.2d 346 (La.1979); Equitable Petroleum v. Central Transmission Inc., 431 So.2d 1084 (La.App.2d Cir.1983). The principal demand is determined on its merits only after a full trial under ordinary process, even though the summary proceedings for the preliminary injunction may touch upon or tentatively decide issues on the merits. Smith v. West Virginia Oil & Gas Co., 373 So.2d 488 (La.1979). The trial court's comment that it "disagreed" with the Police Jury's other contract claims is, strictly speaking, a holding that the Police Jury failed to make a prima facie case on those claims at the preliminary injunction hearing. It is not a dismissal of those claims, and certainly not grounds to transform the case from one of state to federal jurisdiction.
American Waste's first assignment lacks merit.

CERCLA violation
By its second assignment American Waste urges the trial court erred in finding a CERCLA violation. It argues that the trial court's interpretation of the applicable CERCLA provision, 42 U.S.C. ง 9621(d)(3), is plainly wrong, and that provisions of RCRA actually govern the disposal of substances, 42 U.S.C. งง 6924, 6925. Under the proper analysis, American Waste argues, the Dallas dirt may be properly deposited in Magnolia Landfill. American Waste adds that the EPA, through the testimony of Mr. Zehner, has construed the statutes in a manner favorable to American Waste's plan, and the agency construction is entitled to great deference.
*1347 Broadly stated, CERCLA is a statutory scheme that provides a comprehensive response to the problem of hazardous substance release. Wickland Oil Terminals v. Asarco Inc., 792 F.2d 887 (9th Cir.1986). It provides for cleanup, compensation and liability where there is a threat from hazardous substances. L. Barr, "CERCLA Made Simple," 45 Bus.Law. 923, 925 (1990). The final disposition of hazardous substances which have been removed from cleanup sites is addressed in 42 U.S.C. ง 9621(d)(3), which provides as follows:
(d) Degree of cleanup.
* * * * * *
(3) In the case of any removal or remedial action involving the transfer of any hazardous substance or pollutant or contaminant offsite, such hazardous substance * * * shall only be transferred to a facility which is operating in compliance with section 3004 and 3005 of the Solid Waste Disposal Act [42 U.S.C. งง 6924 and 6925] (or, where applicable, in compliance with the Toxic Substances Control Act [15 U.S.C. ง 2601 et seq.] or other applicable Federal law ) and all applicable State requirements. Such substance * * * may be transferred to a land disposal facility only if the President determines that both of the following requirements are met:
(A) The unit to which the hazardous substance * * * is transferred is not releasing any hazardous waste, or constituent thereof, into the ground-water or surface water or soil.
(B) All such releases from other units at the facility are being controlled by a corrective action program approved by the Administrator under subtitle C of the Solid Waste Disposal Act [42 U.S.C. ง 6921 et seq.].
The President shall notify the owner or operator of such facility of determinations under this paragraph. (emphasis added)
This section refers explicitly to two provisions of RCRA, 42 U.S.C. งง 6924 and 6925, which are part of RCRA's Subchapter "C" for the disposal of hazardous wastes. In other words, CERCLA plainly states that if hazardous substances removed from Superfund sites are to be stored offsite, the offsite storage facility must qualify under RCRA Subchapter "C" for hazardous wastes. Magnolia Landfill is, by every witness's admission, only a Subchapter "D" facility for solid waste. Thus the provisions of CERCLA (and of RCRA, read in pari materia), do not permit the storage of the lead-contaminated Dallas dirt at Magnolia Landfill.
American Waste advances several arguments intended to show that this conclusion is wrong. First it cites the reference in 42 U.S.C. ง 9621(d)(3) to "other applicable Federal law." By this argument, hazardous substances extracted from a Superfund site are specifically directed to landfills governed by Subchapter "C," but they may be directed to landfills governed by the less stringent Subchapter "D," which is another applicable Federal law. We disagree. When Congress enunciated the offsite disposition of hazardous substances, it specified RCRA Subchapter "C" facilities. To read the statute as allowing Subchapter "D" facilities as well would subvert Congress's clearly stated intent. The example given in the statute is the Toxic Substances Control Act, a completely different comprehensive federal scheme located elsewhere in the code. We think "other applicable Federal law" refers to other comprehensive federal schemes, not to other sections of RCRA. If Congress had intended that CERCLA hazardous substances could go to RCRA solid waste facilities, it would have so stated. It did not, and we reject American Waste's argument.
Next American Waste asserts that the uncontroverted testimony of Mr. Warren Zehner, the EPA's on-scene coordinator, expresses the agency construction of these statutes and is entitled to great deference. Indeed, courts must defer to the EPA's reasonable construction of CERCLA, *1348 absent a clearly expressed contrary Congressional purpose. B.F. Goodrich Co. v. Murtha, 958 F.2d 1192 (2d Cir.1992), citing Chevron USA Inc. v. Natural Resources Defense Council Inc., 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). However, this deference is granted only when the EPA's interpretation is reasonable under the statute and there are not "compelling indications that it is wrong." B.F. Goodrich Co. v. Murtha, supra at 1205; Weeks v. Quinlan, 838 F.2d 41 (2d Cir.1988). For the reasons already outlined, we find that the applicable statutes do not permit the conclusion that the Dallas dirt may be stored in Magnolia Landfill, a Subchapter "D" facility. Thus the trial court was not wrong to reject Mr. Zehner's interpretation to that effect.
American Waste finally urges that even though the Dallas dirt is considered a "hazardous substance" for purposes of CERCLA, it is not considered "hazardous waste" for purposes of RCRA, and may therefore be stored in a RCRA Subchapter "D" facility. We do not dispute that under the statutory definitions, this is true; the concept of "hazardous substance" under CERCLA, 42 U.S.C. งง 9601(14), 9602, and of "hazardous waste" under RCRA, 42 U.S.C. ง 6903(5), are not equivalent.[1] Several witnesses at the hearing on the preliminary injunction acknowledged this, including the Police Jury's witness, Dr. Richard Parent. Under the circumstances of this case, however, the classification is not the only factor. The applicable provision of CERCLA, 42 U.S.C. ง 9621(d)(3), directs that hazardous substances removed from Superfund cleanup sites must be disposed of in Subchapter "C" facilities if they are taken offsite. This is so regardless of whether the substance qualifies as RCRA "hazardous waste."
The trial court's analysis of the contract and the federal statutes, and its dismissal of American Waste's objections, is not plainly wrong. This assignment lacks merit.

The liable party
By its third assignment American Waste urges that if there was a CERCLA violation, the trial court erred in finding that American Waste was the violator. The argument is divided into two headings.
First, American Waste claims that 42 U.S.C. ง 9621(d)(3) prohibits only the transfer of hazardous substances to a Subchapter "D" facility; American Waste is without fault because it is only receiving, not transferring, the Dallas dirt. This facile argument is premised on an incorrect reading of ง 9621(d)(3). True, the statute uses the word transfer to describe the proscription, but CERCLA does not define transfer. Perhaps American Waste wishes Congress had said "transport," which is defined in CERCLA, 42 U.S.C. ง 9601(26), as the "movement of a hazardous substance by any mode, including pipeline[.]" A plain reading of the entirety of ง 9621(d)(3) shows that it addresses not just the "transport" or movement of hazardous substances but their transfer "in the case of any removal or remedial action [.]" "Remedial action" expressly includes storage and disposition of the substances. 42 U.S.C. ง 9601(24). Transfer, as used in this statute, obviously encompasses American Waste's conduct in agreeing to accept and dispose of the transported material.
Second, American Waste claims that the statute imposes obligations on the EPA, and not upon receiving facilities such as American Waste. If the Police Jury's suit were based solely on CERCLA, this argument might have merit. However, the claim arises from ถ 2.14 of the contract, which obligates American Waste to "conduct *1349 operations under this contract in compliance with all applicable Federal and State Law." The purpose of this provision is apparently to make American Waste adhere to CERCLA's scheme, which the EPA by statute is bound to enforce. The contract thus binds American Waste to ง 9621's order that hazardous waste "shall only be transferred to a facility which is operating in compliance with section 3004 and 3005 [Subchapter C] * * *." To find that ง 9621 does not so obligate American Waste would render ถ 2.14 meaningless. La.C.C. art. 2049. The trial court found that American Waste's part in the overall scheme to dispose of a hazardous substance, lead-tainted dirt, in this solid waste facility, Magnolia Landfill, is contrary to the letter and spirit of CERCLA. By engaging in this conduct, American Waste breached its obligation to comply with CERCLA, an applicable Federal Law. In effect, CERCLA is a gauge of American Waste's performance, and the trial court was not plainly wrong in finding that American Waste breached the contract.
This assignment lacks merit.

Exclusive contractual remedy
By its fourth assignment American Waste urges the trial court erred in granting a remedy not contemplated by the parties to the contract. In the event of a breach of contract the Police Jury has, under ถ 15.01, the option to terminate the contract; and ถ 15.02 states, more extensively, "The remedy of the contracting parties in the event of a default is the termination of the contract, an action on the bond and an action against the company." This limitation, American Waste argues, excludes the option of injunctive relief against it.
Contracts have the effect of law for the parties. La.C.C. art. 1983; Leenerts Farms Inc. v. Rogers, 421 So.2d 216 (La. 1982). The words of a contract are given their generally prevailing meaning. La. C.C. art. 2047; Franks Petroleum Inc. v. Mayo, 438 So.2d 696 (La.App. 2d Cir.), writ denied 443 So.2d 595 (1983).
Injunctive relief is not available to enjoin the breach of an agreement where the parties have agreed to liquidated damages in case of a breach. Beneficial Fin. Co. of Monroe v. Aldridge, 200 So.2d 681 (La.App. 2d Cir.), writ ref'd 251 La. 220, 203 So.2d 556 (1967), and citations therein; Deer Slayers v. Louisiana Motel & Inv. Corp., 434 So.2d 1183 (La.App. 1st Cir.), writ denied 440 So.2d 151 (1983). In the absence of a contract, Louisiana law acknowledges injunctive relief as a remedy to stop the dumping of chemical wastes into a landfill. La.C.C.P. art. 3601; Salter v. B.W.S. Corp., 290 So.2d 821 (La.1974).
The instant contract does not specifically include or exclude injunction as a remedy for breach. Rather, ถ 15.01 lists termination as an option, and ถ 15.02 authorizes "an action against the company." The initial answer to American Waste's argument, therefore, is that the instant claim for injunctive relief is indeed an action against the company and is not expressly prohibited by the contract.
American Waste further argues that the passages must be read together and interpreted as granting the Police Jury the authority to (1) dissolve the contract or (2) sue on the bond with an action against American Waste for damages. The trial court aptly noted that the contract does not contain a liquidated damages clause. If American Waste can interpret from these provisions a right to sue for damages, then the Police Jury and the trial court can surely construe them to authorize a suit for injunction. As noted, this remedy is not prohibited.
Moreover, if the contract had contained a liquidated damages clause, this would have implicitly eliminated the option of injunctive relief. Beneficial Fin. v. Aldridge, supra. Given the provisions of ถ 15.01 and 15.02, and the possibility of injunction in this type of case, Salter v. B.W.S. Corp., supra, the trial court was not plainly wrong *1350 to find that injunction is an available remedy on this contract.
This assignment lacks merit.

Requisite showing for preliminary injunction
By its fifth assignment American Waste urges that even if the contract allows a suit for injunctive relief, the trial court erred in granting the preliminary injunction without a showing of irreparable injury or that the plaintiff has no other remedy at law. American Waste cites the trial court's remark, in the written opinion, that the Police Jury did not meet its burden of proving irreparable injury. R.p. 474.
An injunction "shall issue in cases where irreparable injury, loss, or damage may otherwise result to the applicant, or in other cases specifically provided by law[.]" La.C.C.P. art. 3601. Irreparable injury usually means loss which cannot be adequately compensated in money damages or measured by pecuniary standard. Terrebonne Parish Police Jury v. Matherne, 405 So.2d 314 (La.1981), cert. denied 456 U.S. 972, 102 S.Ct. 2234, 72 L.Ed.2d 845 (1982). However, irreparable injury is a requisite only when the conduct sought to be enjoined is lawful. The jurisprudence firmly establishes that when the conduct is illegal, a showing of irreparable injury is not required. Miller v. Knorr, supra; Hays v. City of Baton Rouge, 421 So.2d 347 (La.App. 1st Cir.), writ denied 423 So.2d 1166 (1982); Smith v. West Virginia Oil & Gas Co., 365 So.2d 269 (La.App. 2d Cir. 1978), rev'd. on other grounds 373 So.2d 488 (1979); McElveen v. Calcasieu Parish Police Jury, 443 So.2d 666 (La.App. 3d Cir.1983), writ denied 444 So.2d 1222 (1984); Louisiana Associated Gen'l Contractors v. Calcasieu Parish Police Jury, 572 So.2d 623 (La.App. 3d Cir.1990), aff'd 586 So.2d 1354 (1991).
American Waste correctly argues that the trial court did not find the Police Jury made a prima facie showing of irreparable injury. However, the court also found that the Police Jury was seeking to enjoin American Waste from engaging in conduct prohibited by law. In this situation the plaintiff is not required to show irreparable harm. Miller v. Knorr, supra; Smith v. West Virginia Oil & Gas Co., supra, and citations therein. On appeal American Waste does not dispute this principle; instead it argues that this exception to the irreparable harm requirement applies only when there is a "clear" (as opposed to an "arguable") violation of law. In support it cites New Orleans Public Serv. Inc. v. City Council, 539 So.2d 891 (La.App. 4th Cir.1989), Hobbs v. Gorman, 595 So.2d 1264 (La.App. 4th Cir.1992), and Galle v. Coile, 556 So.2d 957 (La.App. 3d Cir.1990). Thus American Waste argues that storing hazardous waste at Magnolia Landfill is at best an arguable violation of CERCLA and does not exempt the Police Jury from proving irreparable injury.
We recognize that the Third and Fourth Circuits, in the cases mentioned, have discussed a distinction between "clear" and "arguable" violations of law. This distinction, however, when drawn within the context of a preliminary injunction, is not appropriate. At a hearing for preliminary injunction, the trial court must determine whether the plaintiff has made a prima facie showing that he will prevail on the merits, and has shown either that he will suffer irreparable injury or that he is entitled to an exception from the requirement of showing irreparable injury. If the plaintiff fails to make his prima facie showing, he cannot obtain an injunction and the issue of irreparable injury or an exception is not reached. This is what happened in the NOPSI and Hobbs cases, supra; the trial court found the plaintiffs had failed to make a prima facie case and declined to grant preliminary injunctions. In both cases the Fourth Circuit affirmed, in effect reserving the question of a violation of law for trial on the merits. Until final resolution, the unproved claim of violation of law may be termed "arguable."
If, however, the trial court finds that the plaintiff has succeeded in making *1351 his prima facie case, and an element of that case is the defendant's violation of the law, the court should not then deny the injunction on grounds that the plaintiff has proved only an arguable violation of law. In these circumstances the showing of a violation of law is part of the plaintiff's prima facie case. If the plaintiff makes his prima facie case, then the distinction between "clear" and "arguable" violations is artificial at best. The question should be couched in terms of the plaintiff's success or failure to make a prima facie showing of violation of law. For this reason we do not agree with the rationale of Galle v. Coile, supra, and decline to follow it.
In the instant case the trial court properly found that the Police Jury made its prima facie case. Since a large portion of its case is American Waste's violation of CERCLA, we cannot say that the Police Jury has not proved this violation clearly enough. On the contrary, it has proved the violation sufficiently to establish a prima facie case against American Waste. That American Waste feels its violation is only "arguable" is of no import, especially since all issues remain open after a hearing for preliminary injunction; this is, after all, interlocutory only and does not decide the merits of the case once and for all. GMAC v. Daniels, supra. The trial court was not plainly wrong to hold that the Police Jury need not show irreparable injury.
American Waste further argues that even if the Police Jury is relieved of showing irreparable injury, in order to support the preliminary injunction it must further show that it is without an adequate remedy at law. The violation of law exception, American Waste asserts, extends only to the requirement of showing irreparable injury and not to the suggested requirement that there be no adequate remedy at law. To this end, American Waste urges that CERCLA provides the Police Jury with an adequate remedy sufficient to obviate the issuance of an injunction, the citizen suits provisions of 42 U.S.C. ง 9659.
In further support of this argument, American Waste cites numerous cases which treat "no adequate remedy at law" conjunctively with the statutory requirement of irreparable injury. See, e.g., Prakasam v. Popowski, 566 So.2d 189 (La.App. 2d Cir.), writ denied 569 So.2d 986 (1990); Hairford v. Perkins, 520 So.2d 1053 (La. App. 3d Cir.1987). We would note that the jurisprudence on this score is less than settled. Other cases discuss the standards disjunctively, as though they were alternative expressions of the same concept. West v. Winnsboro, 252 La. 605, 211 So.2d 665 (1968) (on rehearing); Greenberg v. DeSalvo, 254 La. 1019, 229 So.2d 83 (1969), cert. denied 397 U.S. 1075, 90 S.Ct. 1521, 25 L.Ed.2d 809 (1970); Caffery v. Powell, 320 So.2d 223 (La.App. 3d Cir.1975); Danzie v. Rutland, 232 So.2d 303 (La.App. 2d Cir. 1970); Amacker v. Amacker, 146 So.2d 672 (La.App. 1st Cir.1962) (en banc). Still other cases cite only the requirement of irreparable harm, consistent with a plain reading of art. 3601. Daigre Engineers Inc. v. City of Winnfield, 385 So.2d 866 (La.App. 2d Cir.1980); Melancon v. Assumption Parish Police Jury, 231 So.2d 690 (La.App. 1st Cir.1970); SREF Bon March้ Co. v. D.H. Holmes, 572 So.2d 284 (La.App. 1st Cir. 1990), writ denied 576 So.2d 45 (1991); Exquisito Food Serv. Inc. v. New Orleans Council of Aging, 502 So.2d 1147 (La.App. 4th Cir.1987). Finally, one case has held that "the lack of an adequate remedy at law is synonymous with irreparable harm and entitles one to injunctive relief." J. Weingarten Inc. v. Northgate Mall Inc., 390 So.2d 527 (La.App. 3d Cir.1980), rev'd. on other grounds 404 So.2d 896 (1981), citing Caffery v. Powell, supra.
We recognize that some of these cases interpret "no adequate remedy at law" as distinct from, and additional to, the statutory requirement of irreparable injury needed to obtain injunctive relief. These cases, however, do not address the "illegal action" exception that absolves the plaintiff from having to show irreparable injury. Article 3601, moreover, does not specify "no adequate remedy at law" as a requirement.
On the other hand, the lead cases for the illegal action exception do not require *1352 the plaintiff to make an additional showing of no adequate remedy at law. Miller v. Knorr, supra; Hays v. City of Baton Rouge, supra; Smith v. West Virginia Oil & Gas Co., supra, and citations therein. In our view this approach is reasonable. It is supported by a plain reading of art. 3601. Besides, there is always the prospect of legal redress against defendants who violate the law; can this redress be considered an "adequate remedy at law"? If so, no petition for injunction urging violation of law would ever be successful, but this is clearly not the case. See West v. Winnsboro, supra; Guzzardo v. Town of Greensburg, 563 So.2d 424 (La. App. 1st Cir.1990). Thus, once a plaintiff has made a prima facie showing that he will prevail on the merits and that the conduct he seeks to enjoin is reprobated by law, he is entitled to injunctive relief without any further requirement to show that no adequate remedy at law exists.
In sum, after finding that the Police Jury had made a prima facie showing that it will prevail on the merits and that it was not required to prove irreparable injury, the trial court was not plainly wrong to grant the preliminary injunction without proof that the Police Jury had no other adequate remedy at law.
Finally, American Waste urges that the preliminary injunction was erroneously issued because it enjoins the actions of the Executive Branch of the United States government. In response, it suffices to say that the preliminary injunction herein is directed to American Waste, and no injunction or order of any kind has been issued against the EPA or the federal government; they are not even parties to the suit.
American Waste's fifth assignment lacks merit.

The Police Jury's appeal
The Police Jury filed a motion and order for appeal on May 12, 1992. In brief it contests the trial court's conclusion that the first two causes of action did not entitle the Police Jury to a preliminary injunction.
In the first cause of action, the Police Jury urged that ถถ 2.01 and 2.02 restricted the territorial scope of American Waste's operations to Ouachita Parish, thus prohibiting the company from importing waste such as the Dallas dirt from outside the parish; and that in obtaining a permit modification from DEQ, the company neither showed the "need" for modification nor kept the parish "fully informed" of the necessary modification. In the second cause of action, the Police Jury urged that ถ 2.04 banned the company from receiving and disposing of "hazardous waste," and the Dallas dirt fits the contract's definition of "hazardous waste." In essence, the Police Jury now argues that the trial court was plainly wrong in finding that the Police Jury would not prevail on these contractual claims.
At the outset we would observe that the trial court's factual findings are vested with great discretion, and cannot be disturbed absent a showing of manifest error. Rosell v. Esco, 549 So.2d 840 (La.1989), and citations therein. The trial court's great discretion extends to findings based on purely documentary evidence. Virgil v. American Guarantee & Liab. Ins. Co., 507 So.2d 825 (La.1987).
One of the contested portions of the contract, ถ 2.04, is not a model of clarity. It obligates American Waste to accept for disposal "all material whatsoever, except hazardous waste, collected by any refuse hauler within the Parish of Ouachita." Does this mean that American Waste is prohibited from ever accepting, or has the option not to accept, any hazardous waste? And does this option extend only to hazardous waste delivered by a hauler, but not to that carried by parish residents in their personal automobiles, trailers and trucks? Given the ambiguity of this provision, we would be inclined simply to defer to the trial court's finding.
We are more guided, however, by the fact that the preliminary injunction is only an interlocutory decree. La.C.C.P. art. 3601; GMAC v. Daniels, supra. Unless *1353 the parties expressly agree to submit the case for final decision at the hearing on the rule for preliminary injunction, the principal demand for a permanent injunction is determined on its merits only after a full trial under ordinary process, even though the summary hearing on the rule for preliminary injunction may tentatively decide merit issues. Equitable Petroleum v. Central Transmission Inc., supra, and citations therein. In the instant case the parties have not submitted the issue of permanent injunction on the evidence adduced for the preliminary injunction.
Moreover, the evidence thus far adduced on the issue of territoriality is tentative at best. Don Clark, Waste Management's president in 1984, testified that the contract was not intended to limit the company; however, Arlan Rawls of the Police Jury testified his understanding was "it was going to be Ouachita Parish only." R.pp. 983, 552. Dr. Brent, of DEQ, admitted that the initial permits generated some confusion about the service area. R.p. 828. The evidence as to hazardous waste is equally inconclusive. Dr. Parent, a Police Jury witness, along with several of American Waste's witnesses, testified that the Dallas dirt was a CERCLA hazardous substance but not a RCRA hazardous waste. R.pp. 688-689 (Dr. Parent); 782 (Dr. Pier); 827 (Dr. Brent). The trial court did not address which definition activated ถ 1.05's definition of a "hazardous substance." These are the kinds of questions that should be more carefully explored at the trial for the permanent injunction.[2]
In light of the procedural posture and the evidence adduced below, we are constrained to hold that when the trial court stated that it "rejects these arguments of the Police Jury and agrees with the position of American Waste," the court only meant that the Police Jury did not make a prima facie case for injunction on those causes of action. These issues are still alive and may be litigated at the trial on the merits. For purposes of the preliminary injunction, however, we will defer to the trial court's discretion and not disturb these interlocutory findings.
The Police Jury's assignments of error lack merit.

Conclusion
For the reasons expressed, the trial court's judgment granting the preliminary injunction on the third cause of action but denying it on the first two is in all respects affirmed. Appellate costs are to be assessed one-half to American Waste and Pollution Control Company; the remaining costs are not assessed. La.R.S. 13:4521.
AFFIRMED.
NOTES
[1] We accept the admonition of counsel for the Police Jury to avoid making a word mean just what we choose it to mean, "neither more nor less." The attribution, however, is to Humpty Dumpty (not the Red Queen) in Lewis Carroll's Through the Looking Glass (not Alice in Wonderland ). See M. Gardner, The Annotated Alice (New York: New American Library, c1960), 269.
[2] The petition of intervention filed by Verdiacee Hampton-Goston has also not been formally disposed of.