PETTIGREW, J.
| sin this consolidated proceeding, three parish school boards have sought declaratory and injunctive relief against the Louisiana School Employees’ Retirement System (LSERS), State Treasurer John N. Kennedy, and the Louisiana Department of Education to prohibit the withdrawal of funds available for their benefit from the state treasury pursuant to La. R.S. 11:1202. The trial court denied the school boards’ request for declaratory and injunc-tive relief and overruled an exception of res judicata raised by the Pointe Coupee Parish School Board. The suits were dismissed with prejudice, and the school boards now appeal. After a thorough review of the record and the arguments presented, we find no merit to the school boards’ assignments of error and affirm the judgment of the trial court.
FACTS AND PROCEDURAL HISTORY
This suit arises out of the privatization of bus transportation services by the Pointe Coupee, Evangeline, and St. James Parish school boards. Between 2005 and 2011, the school boards independently contracted with Laidlaw Education Services and/or an affiliate company, First Student, Inc. (hereinafter collectively referred to as “Laidlaw”), to be the private provider of student transportation services. The contracts provided that Laidlaw would be awarded individual school bus routes as *42 they became available, resulting in the elimination of several driver positions previously held by public employees who were contributing members of LSERS. In total, Pointe Coupee eliminated eight driver positions, Evangeline eliminated five positions, and St. James eliminated twelve positions during the time period relevant to this litigation.
As a result of the alleged privatization of these positions, LSERS made demands upon the school boards for payment of a claimed portion of its unfunded accrued liability (UAL) pursuant to La. R.S. 11:1195.1 and La. R.S. ll:1195.2.[1] Specifically, LSERS | ¿demanded payment in the following amounts, plus interest: (1) $310,856.00 from the Pointe Coupee Parish School Board;[2] (2) $256,041.00 from the Evangeline Parish School Board; and (3) $958,518.00 from the St, James Parish School Board. The school boards refused to voluntarily relinquish payment, and LSERS gave notice of its intent to utilize the procedures detailed in La. R.S. 11:1202 to mandate that the state treasurer or Department of Education deduct the delinquent payments from any monies then due the school boards.[3]
In response, the school boards each individually brought suit in the 19th Judicial District Court, seeking to enjoin LSERS from invoking collection procedures pursuant to La. R.S. 11:1202. The Pointe Cou-pee Parish School Board argued in its petition that LSERS was collaterally es-topped and barred by a final consent judgment rendered in a prior proceeding entitled Pointe Coupee Parish School Board v. The Louisiana School Employees’ Retirement System, 19th Judicial District Court, Docket No. 574,462. Also, the school boards sought declaratory judgment that the amounts due were calculated incorrectly and that the provisions of La. R.S. 11:1202 purporting to authorize LSERS to | ^collect from the state treasurer monies *43 then available for distribution to or for the benefit of the school boards are in conflict with Article 3, § 16(A), Article 7, § 10(D)(1), and Article 8, § 13(A) of the Louisiana Constitution of 1974. To the extent that the suits involve common issues of law and fact, they were consolidated for joint consideration pursuant to orders dated July 24, 2012, and October 19, 2012.
On December 13, 2012, the consolidated matter proceeded to trial. On February 11, 2013, the trial court issued written reasons finding no merit to the Pointe Coupee Parish School Board’s claim of collateral estoppel. Moreover, the court found that the statutes in question do not conflict with the provisions of the Louisiana Constitution. Also, the court found that the school boards failed to prove by a preponderance of the evidence that they would suffer irreparable injury so as to warrant injunctive relief. On February 25, 2013, the trial court signed a written judgment denying the school boards’ requests for declaratory and injunctive relief, overruling the Pointe Coupee Parish School Board’s exception of res judicata, and dismissing the plaintiffs’ petitions with prejudice. The school boards have now appealed that judgment.
ISSUES PRESENTED FOR REVIEW
On appeal, the school boards argue that the procedure for deducting funds from the state treasury pursuant to La. R.S. 11:1202 conflicts with the provisions of La. Const. Art. 3, § 16(A), Article 7, § 10(D), and Article 8, § 13(B). Alternatively, the school boards argue that the provisions of La. R.S. 11:1195.1 and La. R.S. 11:1195.2 do not apply to employees who retire or resign without termination or whose routes are eliminated through merger or consolidation. Also, the school boards argue that the UAL attributable to the identified employees was erroneously calculated and that the UAL allegedly attributable to resigning employees would be extinguished by their withdrawal of retirement contributions. The school boards additionally argue that the doctrine of collateral estop-pel bars LSERS from enforcing collection -from the Pointe Coupee Parish School Board. Lastly, the school boards submit that they would sustain irreparable harm without recourse if LSERS is allowed to withdraw funds held for their benefit from the state treasury or Department of Education.
JjjDISCUSSION AND ANALYSIS
Constitutional Claims
At the outset, we note that the constitutionality of La. R.S. 11:1202 is a legal question, which is subject to de novo review. La. Mun. Ass’n v. the State of La. and the Firefighters’ Retirement Sys., 2004-0227, p. 45 (La.1/19/05), 893 So.2d 809, 842. Statutes are generally presumed to be constitutional and the party challenging the validity of the statute has the burden of proving it is unconstitutional. State v. Fleury, 2001-0871, p. 5 (La.10/16/01), 799 So.2d 468, 472. The provisions of the Louisiana Constitution are not grants of power but instead are limitations on the otherwise plenary power of the people exercised through the legislature. Bd. of Comm’rs of North Lafourche Conservation, Levee and Drainage Dist. v. Bd. of Comm’rs of Atchafalaya Basin Levee Distr., 95-1353, p. 3 (La.1/16/96), 666 So.2d 636, 639. Therefore, the legislature may enact any legislation that the state constitution does not prohibit. Bd. of Comm’rs, 95-1353 at 4, 666 So.2d at 639. In that context, the party challenging the constitutionality of a statute must cite to the specific provision of the constitution which prohibits the legislative action. Fleury, 2001-0871 at 5, 799 So.2d at 472; *44 Bd. of Comm’rs, 95-1353 at 4, 666 So.2d at 639. The plaintiffs bear the burden of proving the unconstitutionality of the statutes at issue. La. Mun. Ass’n, 2004-0227 at 45, 893 So.2d at 843.
The school boards argue that the collection mechanism in La. R.S. 11:1202 violates La. Const. Art. 3, § 16(A) and La. Const. Art. 7, § 10(D). Louisiana Constitution Article 3, § 16(A) states that “[e]x-cept as otherwise provided by this constitution, no money shall be withdrawn from the state treasury except through specific appropriation, and no appropriation shall be made under the heading of contingencies or for longer than one year.” Similarly, La. Const. Art. 7, § 10(D)(1) deals with the expenditure of state funds and provides that “[ejxcept as otherwise provided by this constitution, money shall be drawn from the state treasury only pursuant to an appropriation made in accordance with law.” Insofar as La. R.S. 11:1202 authorizes the transmission of school board funds based upon a “certification” by the board of trustees of LSERS that a payment is 17delinquent, the school boards argue that the statute violates the constitutional appropriations requirement.
In support, the school boards cite Firefighters’ Ret. Sys. v. Landrieu, 572 So.2d 1175 (La.App. 1 Cir.1990), writ denied 575 So.2d 811 (La.1991). In Firefighters, the police and firefighter retirement systems sought judgment declaring that they were entitled to possession of funds collected pursuant to La. R.S. 22:1419(A) and held by the state treasurer.[4] The trial court ordered the treasurer to remit the funds, and an appeal was taken. On appeal, the state treasurer argued that the trial court erred by ordering her to release the funds without an appropriation of the legislature, as provided for in La. Const. Art. 3, § 16(A) and Article 7, § 10(A). This court pointed out that the constitutional provisions relied upon by the treasurer pertained to the withdrawal of state funds from the state treasury and require a legislative appropriation for such actions. Firefighters, 572 So.2d at 1180. The retirement systems’ funds, by contrast, were not required to be deposited in the state treasury; therefore, this court held that no appropriation was needed to remove the funds from the state treasury. Id. Under the rationale in Firefighters, the school boards argue herein that LSERS seeks to withdraw state funds and that the withdrawal requires a legislative appropriation.
We do not find the school boards’ constitutional arguments under La. Const. Art. 3, § 16(A) and Art. 7, § 10(A) to be persuasive. Louisiana Revised Statute 11:1202(A)(2) clearly states that “the state treasurer or the Department of Education shall deduct the amount thereof from any monies then available for distribution to or for the benefit of that parish or city school board (emphasis added).” The statute is clear that a deduction is allowed only if funds have already been appropriated and are available.
Monies are made available to parish school boards through allocation and disbursements pursuant to the Minimum Foundation Program (MFP) formula. Louisiana ^Constitution Article 8, § 13, dealing with funding and apportionment for education, provides, in relevant part:
(B) Minimum Foundation Program. The State Board of Elementary and Secondary Education, or its successor, shall annually develop and adopt a formula which snail be used to determine the cost of a minimum foundation program of education in all public elementary and *45 secondary schools as well as to equitably allocate the funds to parish and city school systems. Such formula shall provide for a contribution by every city and parish school system. Prior to approval of the formula by the legislature, the legislature may return the formula adopted by the board to the board and may recommend to the board an amended formula for consideration by the board and submission to the legislature for approval. The legislature shall annually appropriate funds sufficient to fully fund the current cost to the state of such a program as determined by applying the approved formula in order to insure a minimum foundation of education in all public elementary and secondary schools. Neither the governor nor the legislature may reduce such appropriation, except that the governor may reduce such appropriation using means provided in the act containing the appropriation provided that any such reduction is consented to in writing by two-thirds of the elected members of each house of the legislature. The funds appropriated shall be equitably allocated to parish and city school systems according to the formula as adopted by the State Board of Elementary and Secondary Education, or its successor, and approved by the legislature prior to making the appropriation. Whenever the legislature fails to approve the formula most recently adopted by the board, or its successor, the last formula adopted by the board, or its successor, and approved by the legislature shall be used for the determination of the cost of the minimum foundation program and for the allocation of funds appropriated (emphasis added).
Article 8, § 13(B) dictates specific and unique procedures for educational expenditures made through the MFP. The MFP formula originates with the State Board of Elementary and Secondary Education and is approved by the legislature. La. Const. Art. 8, § 13(B). Once approved, the legislature is required to fully fund the current cost to the state of such a program as determined by applying the approved formula. Id. The funding is accomplished via concurrent resolution and appropriated through a bill passed by both houses of the legislature. La. Const. Art. 8, § 13(B); see also La. Fed’n of Teachers v. State, 2013-0120, p. 15 (La.5/7/13), 118 So.3d 1033, 1044 citing Joint Rules of the Louisiana Senate and House, Rule No. 20(A)(1)(b)(iii). Once appropriated, MFP funds are available for allocation or distribution to the school systems. La. Const. Art. 8, § 13(B).
lain light of the detailed funding and apportionment provisions of La. Const. Art. 8, § 13, it is clear that the MFP funds are appropriated by the legislature and are then available for allocation or distribution to the school systems. The school boards have failed to cite any constitutional provision that prohibits LSERS from deducting from the allocated funds the amounts it is owed pursuant to La. R.S. 11:1202. When La. R.S. 11:1202 is read in conjunction with La. Const. Art. 8, § 13, it is apparent that the school boards’ argument that the statute allows LSERS to unilaterally withdraw funds from the state treasury is unfounded. If there are no appropriated funds available for distribution, then no deduction can be made under La. R.S, 11:1202(A)(2). Moreover, the school boards’ reliance on Firefighters is misplaced, because this case does not involve an attempt to withdraw unappropriated state funds. Thus, we find that the school boards failed to satisfy the burden of proving La. R.S. 11:1202 is unconstitutional.
Also, we reject the school boards’ arguments that LSERS’ invocation of La. R.S. 11:1202 violates La. Const. Art. 8, *46 § 13(B) by diverting MFP funds from their intended use. Retirement funds are a fundamental component in the cost of public education. The MFP formula includes an allowance for the support of increased mandated costs in retirement. See S. Con. Res. No. 99, La.2012 Reg. Sess. Section IV(E) of the current MFP formula is entitled “Support for Increasing Mandated Costs in Health Insurance, Retirement, and Fuel,” and states that “[c]ity, parish, and other local public school systems shall receive a minimum of $100.00 for each student in the prior year February 1 membership.” Id. The provisions of La. Const. Art. 8, § 18, which require that MFP funds be used for a minimum foundation program of education, are not violated where the funds are being used for their intended purpose, which includes the retirement costs of school employees.[5] We, therefore, find that the school boards have failed to satisfy the burden of proof to show that La. R.S. 11:1202 violates La. Const. Art. 8, § 13.
| inApplication of La. R.S. 11:1195.1 and 11:1195.2
We next turn to the school boards’ arguments that LSERS misapplied La. R.S. 11:1195.1 and La. R.S. 11:1195.2. Insofar as the school boards’ arguments relate to the factual findings of the trial court as to whether the relevant driver positions were privatized or eliminated within the meaning of the statutes, we shall review those claims using a manifest error standard of review.[6] Almon v. Almon, 2005-1848, p. 3 (La.App. 1 Cir. 9/15/06), 943 So.2d 1113, 1115. The two-part test for appellate review of a factual finding is: (1) whether there is a reasonable factual basis in the record for the finding of the trial court; and (2) whether the record further establishes that the finding is not manifestly erroneous. Mart v. Hill, 505 So.2d 1120, 1127 (La.1987). If a reasonable factual basis exists, an appellate court may set aside a trial court’s factual finding only if, after reviewing the record in its entirety, it determines the trial court was clearly wrong. See Stobart v. State, through Dept. of Transp. and Dev., 617 So.2d 880, 882 (La.1993).
The school boards show on appeal that, except for one Pointe Coupee employee who was terminated, all of the employees identified in LSERS’ demands either resigned or retired.[7] Thus, the school *47 boards contend that La. R.S. 11:1195.1 is inapplicable, because I nthe statute contemplates the situation where an “employer terminates a group of employees.” (Emphasis added.) Moreover, the school boards point out that the route of at least one of the identified employees was merged with another route upon his retirement and at least three Pointe Coupee drivers and four St. James drivers assumed the routes of departing drivers. The school boards aver that both La. R.S. 11:1195.1 and La. R.S. 11:1195.2 condition their applicability to an employer’s removal of a position through “privatization” and not mere elimination. The school boards suggest that elimination of a driver position through merger or assumption of a route does not equate to a privatization under the controlling statutes.
In considering the school boards’ arguments, we first turn to the language of *48 the statutes themselves. Louisiana Revised Statute 11:1195.1 provides for payment of the UAL by the employer “if an employer terminates a group of employees belonging to this system by eliminating the positions ... through privatizing, outsourcing, contracting the service with a private employer, or any other means.” (Emphasis added.) Likewise, La. R.S. 11:1195.2 provides for UAL payment “if an employer eliminates any position through | ^privatizing, outsourcing, contracting the service with a private employer, or any other means.” (Emphasis added.) Looking at the statutes in whole part and in conjunction with one another, we believe that the lawmakers clearly contemplated the situation where positions are eliminated, whether through privatization or other means. Based on a plain reading of the statutes, the relevant inquiry is whether there is a loss of a public position and employee that otherwise would be available to contribute to LSERS.
Our interpretation of the statutory law is supported by the testimony of LSERS Executive Director Charles Bujol. Although the statutes do not define the term “privatization,” Mr. Bujol confirmed at trial that a “privatized position” is “that which is normally part of the employment of the school board that has been outsourced to a private entity that no longer participates in the LSERS. retirement system.” Mr. Bujol further explained that “[i]f an existing school board employee takes the position of the person who retired or left for whatever reason, and down the line it creates a privatized position, that is a privatized position and the school system is assessed that-informed that they have to pay that debt.”
The undisputed facts herein are that each of the school boards contracted with Laidlaw to be the private provider of student transportation services and thereafter eliminated several positions previously held by public employees. When the identified employees retired, there became one less bus route that was driven by a public employee, with the exception of the sole Pointe Coupee employee whose route was merged. Regardless of who filled the eliminated positions, the result was that there was one less public employee contributing to LSERS. Thus, there is no real dispute that the positions at issue were eliminated as contemplated by La. R.S. 11:1195.1 and La. R.S. 11:1195.2. We, therefore, conclude that the trial court did not manifestly err in finding as a factual matter that the positions were eliminated as contemplated by the statutes and that the school boards are liable to LSERS for that portion of the UAL lost as a result of the removal of these positions.
Alternatively, the school boards argue that LSERS incorrectly calculated the UAL under La. R.S. 11:1195.1 and La. R.S. 11:1195.2 and, therefore, the trial court erred in | ^denying declaratory relief. Louisiana Revised Statute 11:1195.1 requires payment of “the unfunded accrued liability existing on June thirtieth, immediately prior to the date of termination attributable to the employees being terminated.” Likewise, La. R.S. 11:1195.2 requires payment of “the unfunded accrued liability existing on June thirtieth, immediately prior to the date of termination of the employee in that position, which is attributable to that position.” The school boards argue that calculation of the UAL requires identification of the benefits liability for the terminated employees to be factored by that portion of the accrued liability that is unfunded. Instead, LSERS based its calculations on the portion of the UAL that was attributable to each of the respective school boards as a whole. Those portions were determined by factoring privatized payroll *49 with the total payroll for all LSERS members. The school boards submit that use of those values does not comply with La. R.S. 11:1195.1 and La. R.S. 11:1195.2.
Further, it is the position of the school boards that the UAL attributable to resigning employees were extinguished by the withdrawal of their retirement contributions. In all, the school boards point out that four of the identified employees withdrew their contributions from LSERS before demand was made for payment of the UAL attributable to their positions.[8] To the extent that no adjustment was made to the UAL due to these withdrawals, the school boards submit that the calculations were erroneous.
At trial, LSERS actuary Charles Hall testified in detail as to how he determined the amount due for the privatized positions. Mr. Hall testified that La. R.S. 11:102 has very extensive instructions as to how to construct the funding of the plan and that he complied with those instructions. To calculate retirement system funding, Mr. Hall identified the normal cost of the plan, which is the cost of accrued benefits for a year, along with the UAL which is amortized over a prescribed period. The total calculation is then divided by the total active payroll, as required by the legislature. To determine the UAL resulting from the privatized positions at issue for each parish, Mr. Hall then determined the |upercentage of the payroll attributable to the position that was privatized and allocated this percentage to the UAL.
Mr. Hall further testified that a withdrawal of retirement benefits does not extinguish the UAL for the former employee’s position. Rather, Mr. Hall explained that the obligation to repay the UAL exists, regardless of what action the former employee takes. Mr. Hall defined the UAL as “the present value of future con-tentioned events,” which takes into consideration unforeseen circumstances including early retirement and withdrawal of benefits, among others.
We note that the school boards did not present any testimony or evidence that a different method of calculation would be preferable or that any such method would have produced a different result. The school board also failed to produce any testimony that the UAL attributable to retiring employees was extinguished by the withdrawal of their retirement contributions. Indeed, no evidence was presented to contradict the testimony of Mr. Hall at all. Accordingly, we find no merit to the school board’s claim that the UAL was improperly calculated.
Res Judicata/Collateral Estoppel
The school boards argue on appeal that collateral estoppel bars LSERS from enforcing collection against the Pointe Cou-pee Parish School Board pursuant to La. R.S. 11:1202. The school boards rely on the outcome of a prior case, captioned as Pointe Coupee Parish School Board v. The Louisiana School Employees’ Retirement System, Docket No. 574,462, which matter was also filed in the 19th Judicial District Court and involved similar issues. Specifically, in Suit No. 574,462, a petition was filed by the Pointe Coupee Parish School Board, seeking declaratory and injunctive relief precluding LSERS from collecting the sum of $106,136.23 plus interest as a claimed portion of its UAL following the *50 resignation or retirement of four employees in 2007 and 2008. Suit No. 574,462 was ultimately resolved by virtue of a Consent Permanent Injunction dated March 23, 2010. The consent injunction rendered judgment “permanently enjoining and prohibiting defendant, The Louisiana School Employees’ Retirement System, from attempting to collect, directly from the Pointe Coupee Parish School Board or indirectly |1Bfrom the State Treasurer and the State Department of Education, any portion of the LSERS unfunded accrued liability that defendant has claimed due in the LSERS demand of October 22, 2008.” Because the Pointe Coupee Parish School Board raised the same constitutional arguments in Suit No. 574,462 as in the current litigation, the school boards contend that the doctrine of collateral estoppel permanently precludes LSERS from attempting to collect UAL arising out of the subsequent privatization or elimination of driver positions for the Pointe Coupee Parish School Board.
The doctrine of res judicata is set forth in La. R.S. 13:4231. The statute states:
Except as otherwise provided by law, a valid and final judgment is conclusive between the same parties, except on appeal or other direct review, to the following extent:
(1) If the judgment is in favor of the plaintiff, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and merged in the judgment.
(2) If the judgment is in favor of the defendant, all causes of action existing at the time of final judgment arising out of the transaction or occurrence that is the subject matter of the litigation are extinguished and the judgment bars a subsequent action on those causes of action.
(3)A judgment in favor of either the plaintiff or the defendant is conclusive, in any subsequent action between them, with respect to any issue actually litigated and determined if its determination was essential to that judgment.
The statute, as amended in 1990, embraces both claim preclusion (traditional res judi-cata) and issue preclusion (collateral estop-pel). Gabriel v. Lafourche Parish Water Dist., 2012-0797, p. 5 (La.App. 1 Cir. 2/25/13), 112 So.3d 281, 285, writ denied, 2013-0653 (La.4/26/13), 112 So.3d 848. Under issue preclusion or collateral estop-pel, resolution of an issue of fact or law essential to the determination of the dispute precludes relitigation of the same issue in a different action between the same parties. Gabriel, 2012-0797 at 5, 112 So.3d at 285 citing Chaisson v. Central Crane Serv., 2010-0112, pp. 5-6 (La.App. 1 Cir. 7/29/10), 44 So.3d 883, 886-87; also citing Mandalay Oil & Gas, L.L.C. v. Energy Dev. Corp., 2001-0993, p. 9 (La.App. 1 Cir. 8/4/04), 880 So.2d 129, 135-36, writ denied, 2004-2426 (La.1/28/05), 893 So.2d 72.
|1(;In general, the doctrine of res judicata, as set forth in La. R.S. 13:4231, bars a subsequent action when all of the following elements are satisfied in a prior action: (1) the judgment is valid; (2) the judgment is final; (3) the parties are the same; (4) the cause or causes of action asserted in the second suit existed at the time of the final judgment in the first litigation; and (5) the cause or causes of action in the second suit arose out of the transaction or occurrence that was the subject matter of the first litigation. Burguieres v. Pollingue, 2002-1385, p. 8 (La.2/25/03), 843 So.2d 1049, 1053. Herein, elements four and five do not appear to be satisfied. Suit No. 574,462 was filed on *51 January 21, 2009, and relates to a demand for payment made upon Pointe Coupee Parish School Board on October 22, 2008, as a result of the resignation and retirement of employees in 2007 and 2008. The instant suit by Pointe Coupee captioned as Suit No. 613,906, by contrast, was filed on •July 20, 2012, and relates to a demand for payment made on April 20, 2012, as a result of the retirement, resignation, and termination of employees in 2010 and 2011. To the extent that the positions at issue in the current litigation were not even privatized until after Suit No. 574,462 was filed and the demand for payment giving rise to the current suit was issued over two years after the Consent Permanent Injunction was issued in Suit No. 574,462, it is clear that the causes of action raised by the Pointe Coupee Parish School Board herein did not exist at the time judgment was issued in the first suit. Additionally, since Suit No. 574,462 was in response to the October 22, 2008 demand letter and Suit No. 613,906 was in response to the April 20, 2012 demand letter, it cannot be said that the two cases arise out of the same transaction or occurrence under the traditional doctrine of res judicata.
We also dismiss the school board’s arguments of issue preclusion under La. R.S. 13:4231(3). There is no indication in the Consent Permanent Injunction that the court ever considered the merits of the constitutional and other arguments raised by the Pointe Coupee Parish School Board, and no ruling was made as to those issues. The consent judgment in Suit No. 574,462 was limited and only enjoined LSERS for the unfunded accrued liability sought in the October 22, 2008 demand letter. The [ ¶ injunction made no mention of future demands. We, therefore, do not find any merit to the school board’s claims of res judicata or collateral estoppel. The trial court did not err in overruling the exception of res judicata.
Injunctive Relief
Lastly, the school boards argue that the trial court committed legal error in denying their request for injunc-tive relief Louisiana Code of Civil Procedure Article 3601(A) provides that “[a]n injunction shall be issued in cases where irreparable injury, loss, or damage may otherwise result to the applicant or in other cases specifically provided by law.” Alternatively, a petitioner is entitled to in-junctive relief without the requisite showing of irreparable injury when the conduct sought to be restrained is unconstitutional or unlawful, i.e., when the conduct sought to be enjoined constitutes a direct violation of a prohibitory law and/or a violation of a constitutional right. Jurisich v. Jenkins, 99-0076, p. 4 (La.10/19/99), 749 So.2d 597, 599 citing South Cent Bell Tel. Co. v. La. Pub. Serv. Comm’n, 555 So.2d 1370 (La.1990). Once a plaintiff has made a prima facie showing that the conduct to be enjoined is reprobated by law, the petitioner is entitled to injunctive relief without the necessity of showing that no other adequate legal remedy exists. Jurisich, 99-0076 at 4, 749 So.2d at 599-600 citing Ouachita Parish Police Jury v. Am., Waste & Pollution Control, 606 So.2d 1341 (La.App. 2 Cir.), writ denied, 609 So.2d 234 (La.1992), cert. denied, 508 U.S. 909, 113 S.Ct. 2339, 124 L.Ed.2d 249 (1993).
For reasons previously discussed herein, we find that the school boards have failed to make a prima facie showing that La. R.S. 11:1202 violates any provision of the Louisiana Constitution. Also, we find that the use of MFP funds for retirement is consistent with the purpose of and is for *52 the benefit of the parish school boards.[9] Thus, we do not find that the trial court committed legal error in finding that the school |1sboards failed to prove irreparable injury by a preponderance of the evidence. Accordingly, the school boards are not entitled to injunctive relief.
CONCLUSION
Based on our review of the record and the arguments presented by the school boards on appeal, we find that the trial court did not err in denying the school boards’ requests for declaratory and in-junctive relief and in overruling the exception of res judicata raised by the Pointe Coupee Parish School Board. Accordingly, we affirm the judgment of the trial court dated February 25, 2013. Costs of this appeal in the amount of $3,888.50 are assessed against the plaintiffs-appellants, the Pointe Coupee Parish School Board, the Evangeline Parish School Board, and the St. James Parish School Board.
AFFIRMED.

.Louisiana Revised Statutes 11:1195.1 and 1195.2 provide guidelines relative to LSERS and provide, in pertinent part, as follows:
§ 1195.1. Unfunded accrued liability; payment by employer
A. Notwithstanding any other provision of law, if an employer terminates a group of employees belonging to this system by eliminating the positions held by those employees through privatizing, outsourcing, contracting the service with a private employer, or any other means, then the employer shall remit that portion of the unfunded accrued liability existing on June thirtieth, immediately prior to the date of termination attributable to the employees being terminated.
[[Image here]]
§ 1195.2. Unfunded accrued liability; payment by employer; any position
A. Notwithstanding any other provision of law, if an employer eliminates any position through privatizing, outsourcing, contracting the service with a private employer, or any other means, then the employer shall remit that portion of the unfunded accrued liability existing on June thirtieth, immediately prior to the date of termination of the employee in that position, which is attributable to that position.

. We noted inconsistencies in the record. The petition states $310,856.00, while the briefs state $301,856.00.

. Louisiana Revised Statute 11:1202 provides, in relevant part:
A. (1) Should any parish or city school board or other employer refuse to transmit either employer's contributions or members’ contributions by the due date, the payment of such contributions shall be delinquent.
(2) Upon a certification to the state treasurer or the Department of Education by the board of trustees of the School Employees' Retirement System of Louisiana that a payment is delinquent, the state treasurer or the Department of Education shall deduct the amount thereof from any monies then available for distribution to or for the benefit of that parish or city school board ... and shall transmit said amount directly to the board of trustees.

. Louisiana Revised Statute 22:1419, dealing with assessments against insurers, was redes-ignated as La. R.S. 22:1476 by Acts 2008, No. 415, § 1, effective January 1, 2009.

. We are aware that the Louisiana Supreme Court has held that the diversion of MFP funds from public schools to nonpublic schools violates La. Const. Art. 8, § 13(B). See La. Fed.'n of Teachers v. State, 2013-0120 (La.5/7/13), 118 So.3d 1033. However, we distinguish the holding in La. Fed. ’n of Teachers from the facts herein, where the MFP funds are being used for the purposes encompassed by the MFP.

. We note that even if we view the school boards’ arguments that LSERS misapplied La. R.S. 11:1195.1 and La. R.S. 11:1195.2 as a mixed question of law and fact, the issue is still subject to a manifest error standard of review. See Dufrene v. Morgan Equipment Rental, Inc., 98-1582, p. 8 (La.App. 1 Cir. 9/24/99), 754 So.2d 1000, 1005.

.The school boards contend that the positions at issue in this litigation were eliminated as follows:
*47 [[Image here]]

. The following withdrawals were made by retiring employees: (1) $10,282.33 by Diedre Clark on July 15, 2011; (2) $23,000.15 by Brenda Frank on November 10, 2010; (3) $5,569.16 by Morris Bowser on December 15, 2010; and (4) $10,191.57 by Jerome Bradford on December 15, 2010.

. Although the school boards argued that they could suffer potential financial hardship, they failed to present any real substantive evidence of irreparable harm in support of the claim for injunctive relief.